631 A.2d 559

FRANK P. LUCAS, JR., PETITIONER–APPELLANT, v. STATE OF NEW JERSEY, DIVISION OF PENSIONS (POLICE AND FIRE-MEN'S RETIREMENT SYSTEM), DEPARTMENT OF PERSON-NEL, MERIT SYSTEM TRAINING BOARD, POLICE TRAINING COMMISSION, CITY OF NEWARK, AND NEWARK POLICE DEPARTMENT, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 14, 1993—Decided September 28, 1993.

Before Judges PRESSLER, DREIER and KLEINER.

*Jon Kearney* argued the cause for appellant (*Pope* and *Bergrin*, attorneys; *Mr. Kearney*, on the letter brief).

*Judeth A. Piccinini*, Deputy Attorney General, argued the cause for respondents (*Fred DeVesa*, Acting Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Ms. Piccinini*, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Under *N.J.S.A.* 40A:14–127, a person over the age of 35 is not eligible for appointment as a member of a local police department. *N.J.S.A.* 40A:14–127.1, first enacted by *L.* 1979, *c.* 461, modified that rule by permitting appointment of a person over 35 who had previously served as a police officer provided that at the time of appointment that person's actual age subtracted by the number of years of the prior service not exceed 35. The question of first impression raised by this appeal is whether the modified-age provision of *N.J.S.A.* 40A:14–127.1 applies to persons whose prior police service was not in this state. We hold that it does and therefore reverse the contrary decision of the Merit System Board.

The factual context in which the question is presented is not in dispute. Appellant Frank P. Lucas, Jr., whose thirty-fifth birthday was on February 26, 1987, applied to sit for a police officer examination with an announced closing date of February 13, 1988. He was admitted to and successfully completed the examination, was appointed as a police officer by the City of Newark, and entered the Police Academy for training in March 1991. Pursuant to the subsequent determinations by the New Jersey Department of Personnel and the Division of Pensions, Police and Firemen's Retirement System (PFRS), the Acting Police Director of the Newark Police Department dismissed appellant from the Police Academy in June 1991 on the ground that his age on the closing

date of the examination rendered him both ineligible for appointment pursuant to *N.J.S.A.* 40A:14–127 and ineligible for mandatory enrollment in PFRS as required by *N.J.S.A.* 43:16A–3. According to the record, Lucas was nevertheless retained in employment status and permitted to complete his training pending his appeal to the Merit System Board.

On appeal to the Board, Lucas relied on the fact that he had served as a municipal police officer in the police departments of Virginia Gardens, Florida, and Miami Springs, Florida, between July 1979 and December 1982. He contended that deduction of that two-and-a-half-year period from his age of 36 on the date of the closing of the examination made him eligible for appointment under *N.J.S.A.* 40A:14–127.1. The Merit System Board, for reasons we discuss hereafter, affirmed the local action, concluding that *N.J.S.A.* 40A:14–127.1 applies only to persons previously enrolled in PFRS and hence must perforce exclude persons whose prior police service was out of state since such persons could not, by definition, have been prior PFRS enrollees.

Explanation of our reasons for disagreeing with the Merit System Board's holding requires a foray into the legislative history of *N.J.S.A.* 40A:14–127.1 to –127.3 (the Act). As originally introduced in February 1979, section 1 of Senate No. 3127, ultimately enacted as *N.J.S.A.* 40A:14–127.1 by *L.* 1979, *c.* 461, § 1, read as follows:

> Notwithstanding the provisions of any other law to the contrary, any former municipal policeman who has separated from service voluntarily, and not by removal for cause on charges of misconduct or delinquency, shall be deemed to meet the maximum age requirement for appointment established by N.J.S. 40A:14–127, if his actual age, less the number of years of his previous service as a policeman, would meet the maximum age requirement established by said section.

Section 2 of the original Senate Bill, enacted as *N.J.S.A.* 40A:14–127.2, provided that a person appointed under section 1 was not exempt from the general appointment qualifications prescribed by *N.J.S.A.* 40A:14–122. Section 3 of the original Senate Bill, enacted as *N.J.S.A.* 40A:14–127.3, provided as follows:

The Board ·of the Police and Firemen's Retirement System of New Jersey shall accept as a member of the retirement system any policeman otherwise eligible for membership appointed pursuant to this act, provided that he shall contribute to the retirement system at a rate based on his current age at the time of enrollment.

## The accompanying Sponsor's Statement explained that:

This bill allows any former policeman who separated from service voluntarily to be eligible for reappointment if upon subtracting his prior years of service from his age, his adjusted age is not over 35 years. This gives credit for prior service and would permit municipalities to reappoint experienced policemen, thus saving costs of training and retaining the value of experience. It will also permit the reappointment of policemen who may have been laid off due to economy to be reappointed after age 35 provided their adjusted age does not exceed that required by this act.

The bill gives credit for prior service by allowing service years deducted from a person's age the same as present law permits for persons serving in the armed forces.

The Senate Committee on County and Municipal Government, to which the bill was referred, made one change in its text. It replaced the qualification of a voluntary separation from service in section 1 with the phrase "separated from service other than by removal for cause...." The Committee's Statement explained that its amendment "would conform the bill to the sponsor's stated intention to permit the reappointment of laid-off policemen ... by removing the requirement that a policeman must have left service 'voluntarily' to be eligible." The Committee Statement also added another purpose to be served by the bill, stating that:

The committee believes that this legislation would have the beneficial effect of removing what has in the past been one of the motivating causes for municipal requests of the Legislature to pass special legislation relating to police appointments.

Although the Governor signed the bill, he expressed reservations about some of its provisions which he requested the Legislature to address by prompt amendment. His accompanying press release explained that

[N]o limitation is placed on the length of time between separation from service and reappointment, so that a policeman who is in his forties or fifties and who has been over 10 years out of service could be reappointed. In addition as the bill is written a former policeman could be reappointed when he is close to retirement age and retirement benefits would constitute a windfall to him. The bill does not

change the law on police training and retraining and thus the reappointed policeman would have to be retrained to the extent required under present law.

Due to my sympathy with the general purpose of the bill, I have decided to enact it. However, such legislation should be more narrowly drafted to permit reappointment of former policemen who have been out of service for only a short time and to guard against windfalls from the Police and Firemen's Retirement System.

The Legislature complied with the Governor's request, at least in part, by enacting *L.* 1980, *c.* 41. The first change, not particularly responsive to the Governor's concerns, was the insertion in 127.1 of the phrase "voluntarily or involuntarily" to modify separation from service. The evident import of that amendment was to make clear that despite whatever contrary inferences might have arisen from accompanying legislative and gubernatorial statements, applicability of the Act was not intended to be limited to laid-off police officers and hence that any prior service which did not terminate by reason of the officer's misconduct was qualifying. The second change was more responsive to the Governor's statement. That change was the addition of a final proviso to 127.1, imposing a maximum age of 45 for appointment despite the length of prior experience but exempting from that cap officers who had been laid-off.

It was the third change, an amendment of *N.J.S.A.* 127.3, that constituted the main legislative response to the Governor's fiscal reservations respecting the integrity of PFRS and his expressed concern that the appointment of "overage" officers not permit them to reap "windfalls" from the pension fund. First, as noted, the original version of 127.3 had required the overage officer to contribute to the retirement system at a rate based on "age at the time of enrollment." The amendment required contribution based on "age at the time of *reenrollment.*" (Emphasis added.) The amendment excepted, however, from the reenrollment-age rate those overage officers appointed within two years after their separation who had not yet withdrawn their prior PFRS contributions. Finally, we note that nothing in the 1980 amendment addressed the Governor's observation that the legislation would

not reliably effect municipal economy because overage appointees would nevertheless still require retraining as provided by law.[1]

The last chapter in the legislative history is the 1991 amendment of the Act effected by *L.* 1991, *c.* 461. The import of that amendment was to extend the applicability of the statute to State troopers, sheriff's officers and sheriff's deputies, and county police.

In construing the Act, the Merit System Board started with two propositions: first, that *N.J.S.A.* 40A:14–127.1 and –127.3 are required to be read *in pari materia,* and second, that a person not eligible for enrollment in PFRS is not eligible for appointment as a police officer. We agree with both propositions. We do not, however, agree that they lead to the Board's conclusion that out-of-state service was intended to be excluded from consideration in applying the Act.

The Board relied on two textual facts in reaching its conclusion: first, the Senate Committee's statement that the purpose of the bill was to "permit municipalities to *reappoint* experienced policemen"; and second, the 1980 amendment of *N.J.S.A.* 40A:14–127.3, which changed the determinant of the contribution age of overage members from "age at the time of enrollment" in PFRS to "age at the time of reenrollment" in PFRS. The Board reasoned that since only former New Jersey police officers could be reappointed rather than appointed and reenrolled rather than enrolled, the overage appointment authority was limited to those persons. We do not, however, accord these textual facts the same meaning and significance as the Board did.

First, we are satisfied from the legislative history that the purpose of the Act was not merely to respond to the personal needs of laid-off officers, but also, and perhaps more significantly,

---

[1] *See generally* the Police Training Act, *N.J.S.A.* 52:17B–66 to –73, and the regulations adopted by the Police Training Commission, *N.J.A.C.* 13:1–1.1 to –9.5. Note further that the express authority of *N.J.S.A.* 52:17B–68 permitting the Commission to waive the training requirement for officers previously trained by any "Federal, State or other public or private agency," is implemented by *N.J.A.C.* 13:1–8.4.

to respond to the law enforcement needs of municipalities by affording them recourse to the valuable resource represented by available, experienced police officers over the age of 35, whether or not they had been previously laid off. Patently, the categories of prior experience and having been laid-off are not congruent. That is expressly recognized by the legislative statements. It is also recognized by the Act itself in its discrete provisions for age limitations. As noted, only laid-off officers are exempt from the 45-year age cap. Moreover, there is nothing explicit in the statute restricting the pool of experienced, but not laid-off, officers to those who obtained their experience in New Jersey, and we see no reason why there should be. Indeed, as we have pointed out, see note 1 *supra*, the value of federal and other-state training and experience is expressly recognized by the Police Training Act and the regulations of the Police Training Commission. We also understand from the Committee Statement accompanying the original bill that the Legislature had customarily accorded municipalities the capacity to hire overage officers by enacting special legislation. There is nothing to suggest that persons who had served in law enforcement agencies in other jurisdictions were ineligible for such enactments, and we assume that they were eligible. We further assume that as a general proposition, persons who had been eligible for such enactments were intended by the Act, pursuant to its terms and conditions, to be eligible for hiring without the need for special legislation.

As a textual matter, we recognize the use of the word "reappointment" in both the verbiage of the Act and the accompanying statements. But we fail to see how we can accord that word a technical rather than a vernacular connotation. Clearly, an overage officer who has served in one municipality in this State is eligible under the Act for hiring by another. No one disputes that. But by the same token, such a hiring is not, in contemplation of law, a reappointment. It is a new appointment. We, therefore, read the "reappointment" language as nothing more than a short-hand, convenient, and somewhat imprecise expression of the statutory condition that at some time in the past, the

overage candidate must have been appointed as a law enforcement officer. Since he is again being appointed, he may, in common parlance, be regarded as being reappointed. But that usage of the term applies equally to those whose earlier appointment was out of state.

Nor do we agree with the Board's reading of the significance of the 1980 amendment of *N.J.S.A.* 40A:14–127.3 which substituted "reenrollment" for "enrollment." The terms were used, both in the 1979 and the 1980 versions, not for the purpose of specifying a condition for employment or an act mandated upon employment. They were used to specify the contribution rate upon employment. The Governor's expressed reservation, which resulted in the 1980 amendment, was to avoid pension windfalls for overage appointees. His concern was the protection of the fiscal integrity of PFRS. That integrity would obviously be compromised if an officer who had been a member of PFRS and who had withdrawn his pension contributions were to resume contributions upon the new employment at the same rate as they had been when he was first employed, i.e., when he first enrolled. The 1979 version of the statute, by pegging the overage officer's contribution rate to the "age at the time of enrollment" was ambiguous since it was susceptible to the reading that the original contribution rate would apply. Indeed, it is only that reading which explains the Governor's "windfall" concern. The 1980 amendment, by pegging the contribution rate to the "age at the time of reenrollment," responded to the Governor's concern by making clear that the overage appointee is to be treated as a new hiree for pension contribution calculation purposes and is to receive no actuarial advantage by reason of his former membership in the Fund. In sum, we read the change from "enrollment" to "reenrollment" as having only actuarial, not eligibility, import. Indeed, the State concedes that in terms of protection of the integrity of PFRS and for purposes of calculation of pension contributions, it would make no difference at all whether the overage hiree had never been a member of the Fund or is a former member who had withdrawn his contributions.

Because we are satisfied of the actuarial neutrality of former PFRS membership and because we interpret the phrase "age at the time of reenrollment" as expressing only an actuarial factor, we see no impediment to reading *N.J.S.A.* 40A:14–127.1 consistently with what we understand a primary underlying public policy and legislative purpose of that enactment to have been, namely, affording municipalities the advantage of being able to hire any available, experienced, overage police officer meeting the modified age limitation. We would be unrealistically parochial if we failed to recognize that persons having prior experience in federal law enforcement agencies or in law enforcement agencies of other states may be at least as valuable to our communities as officers who have had prior police experience in other New Jersey communities. There is nothing in the Act or its history that satisfies us of a legislative intent to draw any distinction based on the place of prior experience. Since the applicability of the Act to officers with out-of-state experience furthers its statutory purpose, is not statutorily interdicted, and poses not the slightest threat to the fiscal integrity of PFRS, we conclude that the Act is properly so interpreted.

The City of Newark made clear at oral argument that it has no objection to appellant's reinstatement and had dismissed him only on instruction from the governing State agencies. It does, however, assert that it should not be liable for any back-pay obligations to him. We are satisfied that all questions concerning appellant's remedy should be determined in the first instance by the Merit System Board, to which we remand this matter for that purpose.

Finally, we note that appellant has challenged his dismissal on other grounds, all of which we reject as entirely without merit. *See R.* 2:11–3(e)(1)(E).

The decision of the Merit System Board is reversed and we remand to it for further proceedings consistent with this opinion.